## GEORGE A. CURRIER *vs.* JEREMIAH A. ESTY.

A bill in equity alleged that the defendant brought a writ of entry against the plaintiff, that the plaintiff disclaimed as to all the demanded premises, except a certain part; that the case was submitted to the court on an agreed statement of facts; that judgment was rendered for the tenant; that in that action it was the intention of both parties to raise only the question as to the title of said part, but that by mistake the defendant included in the description of the demanded premises a parcel of land in the plaintiff's occupation to which the defendant had never made any claim; that neither party discovered the mistake until after the agreed statement had been signed; that the defendant then discovered it but purposely said nothing about it until a year after the judgment had elapsed; and that then the plaintiff discovered it. *Held*, that on proof of these facts, the plaintiff was entitled to have the defendant enjoined from taking advantage of the judgment, as to the parcel so included by mistake.

BILL IN EQUITY, filed September 22, 1871, alleging that the plaintiff and defendant were and for five years last past had been owners of adjoining estates in Middleton, both of which were formerly the property of Timothy Fuller; that the plaintiff became the owner of his estate in August 1866, by conveyance from Charles E. Proctor, at which time the defendant was the owner of the adjoining estate; and that in the deed from Proctor, the land conveyed was described as bounded, among other things, by a line running " by land of Esty northwesterly about seventy-six rods to a stake and stones."

The bill further alleged, " that at the time of said conveyance, and for forty years previous thereto, there had existed a division fence upon said line mentioned in said deed, and the same had always been recognized as a division fence, and the true boundary line between said land and the land of the defendant and his grantors; that Proctor and his grantors, for forty years previous to said conveyance, and the plaintiff, after said conveyance, and until the year 1870, always occupied and improved the land on the northeast side of said division fence; and that the defendant and his grantors never occupied or improved, or made any claim or pretence of title to any land on the northeast side of the fence, but always recognized and agreed to the fence as indicating the true boundary line between the estates."

The bill further alleged, that upon said line there has stood, since before the year 1825, a building formerly used as a cider-mill; that partition of the estate of Fuller was made by commissioners among his heirs in 1825; that a parcel thereof, called lot No. 1, was assigned and set off to the grantors of the defendant, and another parcel thereof, called lot No. 2, was assigned and set off to the grantors of the plaintiff; that in the description of the estate set off as lot No. 1, the following words were used, " excluding from said No. 1, and reserving to No. 2 the whole of the cider-house and mill standing on land set to No. 1, together with the necessary privilege about said cider-house, so long as the same shall stand thereon and no longer; " that, in the description of the estate set off as lot No. 2, the following words were used, " also the whole of the cider-house and cider-mill standing on land set to No. 1, so long as said cider-house shall stand thereon and no longer; with necessary privileges about the same; " and that since 1839, the building had not been used as a cider-house or cider-mill, but had been used by the defendant and his grantors as a barn and shoemaker's shop.

The bill further alleged, " that after the purchase aforesaid by the plaintiff in 1866, the defendant claimed that by the change of use of said building, and by the omission to use it as a cider-house or cider-mill, the building and the interest and rights of the plaintiff in the land thereunder had become forfeited, and for the purpose of testing his claim, and of enforcing his right in and to the building and the land thereunder, and for no other purpose, the defendant, on October 13, 1866, brought a writ of entry against the plaintiff, in which he demanded of the plaintiff certain premises the entire description whereof was as follows, namely: ' Beginning with a stake by a public road and by the back side of the barn, directly opposite to the middle of the barn floor; thence running southwesterly with a wall, by road passing by the dwelling-house to a corner; thence southeasterly with a wall by the old road leading to Salem, about thirty-seven rods, to a stake and stones by land formerly belonging to Elizabeth Esty; thence easterly by land formerly belonging to said Elizabeth Esty, about sixty rods to a stake and stones by land formerly belonging to Abigail

K. Fuller; thence northerly with said wall by land of said Abigail five rods to a stake and stones, thence northwesterly by land formerly of Timothy Fuller about seventy-six rods to a stake and stones, (the same being two rods in a southeasterly direction from the foreside of the barn aforesaid,) thence a little more northerly through the middle of the barn aforesaid to the point begun at ,' that the writ of entry was brought for the sole purpose of testing the plaintiff's right to the cider-house and the land under the same, and was so understood at the time by the defendant; that by the words in said description, ' thence northwesterly by land formerly of Timothy Fuller about seventy-six rods to a stake and stones,' the defendant intended to describe and set out the line upon which the boundary and partition fence was then standing as the recognized line of division between his estate and that of the plaintiff; that by accident and mistake, there was omitted from said description, as there had been in previous descriptions in former conveyances, the description of a line between the terminus of said seventy-six rod line, and the stake and stones two rods southeasterly of the old (and now destroyed) barn floor ; that by said accident and mistake, the demanded premises included, as is now claimed by the defendant, about three acres more land than he intended to demand in his writ; that said line of seventy-six rods in length, if extended to said point southeasterly of said barn floor, instead of going under the end or any part of the cider-house, and instead of following the line of the partition fence, would run more than one hundred and fifty feet to the northward of the cider-house and of the fence."

The bill further alleged, " that said description so made by accident and by the mistake of the defendant and his counsel, was understood by the plaintiff and the counsel whom he consulted and retained to defend the action, in precisely the same sense as by the defendant ; that it was distinctly understood by both of the parties, and by their respective counsel, that the demanded premises in the writ included the land within the fences, and therein, the land upon which the larger part of cider-house was then standing, and that the sole and only purpose of the writ was to try the right of the parties respectively to the cider-house and the land

thereunder ; that the plaintiff, relying upon said common and mutual understanding as to the purpose of the writ, and the proper construction of the description in the writ, filed by his counsel a plea to the writ, in which he disclaimed all right, title and interest in and to the premises demanded by the defendant, except as expressed in the following words : ' The tenant says he is the owner of the barn (formerly a cider-house and mill) a part of which stands on the demanded premises, and that he has an easement in so much of the land thereof as such part of said barn or cider-house stands upon, so long as said barn or cider-house, or such part thereof as aforesaid shall stand thereon, with the privileges and appurtenances necessary to the free and convenient use of said barn and cider-house, and the land under the same.' "

The bill further alleged, " that at June term 1867, of the Superior Court, the writ of entry came on for trial, upon the pleadings aforesaid, and was opened to the jury by the counsel for the defendant, in the presence of the defendant, who stated to the jury that the only purpose of the suit was to try the question of the relative rights of the parties to the cider-house and the land under the same, that there was no question of title or boundary other than that, and that the cause would probably result in a question of law ; that thereupon, upon the suggestion of the presiding judge, the case was taken from the jury and submitted to the court upon an agreed statement of facts which was drawn up and signed by the counsel of the parties, in the presence of the defendant, by whom it was assented to in every particular ; and that the material parts of this statement were as follows : ' The demanded premises were formerly parcel of the estate of Timothy Fuller, whose estate was divided by commissioners in 1825. In this division lot No. 1 was assigned to the grantors of the demandant, and lot No. 2 to the grantors of the tenant. At the time of said division there was standing on the line of separation between said lots a building which was called in said description a cider-house and cider-mill. The boundary line between the lots was under said building. Since 1839, this building has not been used as a cider-house or cider-mill, but has been used continually as a barn and shoemaker's shop. The tenant claims

that he has the right to keep the building on the premises so long as it shall stand and no longer. This is the only title or claim which he or his grantors have ever made to any part of the demanded premises.' "

The bill further alleged, " that at the time this statement was signed in the presence and by the direct authority of the defendant, the plaintiff was in possession of all the premises to the northeast of the boundary fence hereinbefore described, and up to the fence ; that it was perfectly known and understood by both the parties that he claimed title to said premises up to the fence, and that the defendant did not claim any title beyond the fence ; that the statement was made and signed with the distinct mutual misunderstanding and mistaken belief that the demanded premises, and the description thereof in the writ, did not include any land beyond the boundary fence and said line upon which the cider-mill was then standing, as distinctly stated in the agreed statement of facts ; " that the Superior Court rendered judgment for the tenant, and the demandant appealed to this court, before whom the questions arising thereupon were argued, and subsequently, by rescript from this court, the Superior Court was required to enter " judgment for the tenant, that he did not disseise the demandant of the land under the building in question, and that he has disclaimed all title to the residue of the land demanded in the writ, and that he recover no costs ; " that the questions of law were argued in this court upon the same mistaken understanding of the description in the writ; that it was decided upon the ground that the reservation in the original division gave to the grantors of the plaintiff a freehold interest and estate in the building and the land under the same, so long as it should stand, notwithstanding the change in its use, but that as the disclaimer professed to claim only an easement the tenant was not entitled to costs; and that at March term 1868 of the Superior Court, judgment was entered for the tenant, in the words of the rescript.

The bill further alleged, " that at some time subsequently to the signing of the agreed statement of facts, it was discovered by the defendant, that by his mistake and the misdescription of the de-

manded premises, as aforesaid, in the writ of entry, he had claimed some three acres and more of land, more than he had intended or desired to claim, that the plaintiff acting under a similar and mutual mistake, had disclaimed title thereto, and that judgment had been entered upon said disclaimer; but the same was not discovered by the plaintiff; that no suggestion was made to him or to his knowledge of such mistake, until long after the expiration of a year subsequent to the rendition of the judgment; but that the same was fraudulently concealed by the defendant, until the expiration of the year, and until it was too late for the plaintiff to apply for a review of the judgment, that said mistake could and might be corrected."

The bill further alleged that after the expiration of a year from the judgment the defendant brought an action of tort against the plaintiff for trespassing on the said three acres and more, claiming and pretending that they belonged to him; " that said claims and pretences of the defendant are fraudulent and unjust; that all the proceedings in the writ of entry were based upon the mutual mistake and misapprehension, and upon the mistaken supposition that the demanded premises were described as bounded by said line, upon which said fence was standing, and over which said building was erected and stood, which mistake was originally the mistake of the defendant, subsequently shared by the plaintiff, and upon which both of them acted; that it is a gross fraud and perversion of justice for the defendant now to claim to take advantage of said mistake and misapprehension; that, if permitted so to take advantage thereof, he is enabled, under the forms of law, and by the application of technical rules, to defraud the plaintiff of his estate; that the plaintiff is entirely remediless in the premises, according to the strict rules of the common law, as said judgment had been rendered more than a year before he had any knowledge that it was based upon a mistake, and the statutes of this Commonwealth do not allow any review to be granted after the expiration of one year from the time when judgment is rendered, except in cases where judgment is rendered without the knowledge ·of the defendant; and that his only remedy is in a court of equity."

· The prayer was that the defendant might be enjoined from setting up or relying upon the judgment in the writ of entry, as evidence of title in himself, or want of title in the plaintiff, to any land lying to the north and east of the said line of fence, which was included in the description of the premises demanded in the writ of entry, and in the disclaimer, by said mutual mistake and misapprehension; or to any land except that which was mutually understood by the parties to be included in the premises described in the writ, and covered by the disclaimer; that he might be debarred from taking advantage of said mistake, to the wrong or prejudice of the plaintiff; and for further relief.

The defendant demurred generally, but *Morton*, J., overruled the demurrer, and ordered the defendant to answer. From the order overruling the demurrer the defendant appealed.

The cause was heard upon bill, answer, replication and proofs, before *Gray*, J., who made a report of the case, of which the material part was as follows :

" All the facts alleged in the bill were proved, except (as to the statements in the second paragraph in the bill) that the maintenance of the division fence and the occupation in accordance therewith were proved to have been since 1840 only, and that the . defendant and his grantors never made any claim or pretence of title northeast of that fence since 1840, and before 1869, except as hereinafter stated. It also appeared that at the interview between the parties and their counsel, in 1867, at which the statement of facts in the writ of entry was agreed on, the present defendant claimed that the division line ran, not under the cider-house, but by the end of the cider-house, five feet further towards the northeast.

" The defendant objected to the admission of oral evidence of the mutual understanding of the parties. The question whether upon the facts proved, or such of them as it was competent for the plaintiff to prove, the plaintiff was entitled to the relief prayed for, was reserved for the determination of the full court, who will enter such decree as justice and equity may require. The bill and demurrer are made parts of this report."

*S. B. Ives, Jr., & R. C. Lincoln,* for the plaintiff, besides the cases cited in the opinion, referred to *Brown* v. *Lamphear,* 35 Vt. 252; *Burton* v. *Wiley,* 26 Vt. 430; *Floyd* v. *Jayne,* 6 Johns. Ch. 479; *Pearce* v. *Olney,* 20 Conn. 544; *Powers* v. *Butler,* 3 Green Ch. 465; *Tomkins* v. *Tomkins,* 3 Stockt. 512; *Bushnell* v. *Harford,* 4 Johns. Ch. 301; *Gouverneur* v. *Titus,* 1 Edw. Ch. 477; *Waldron* v. *Letson,* 2 McCart. 126; *Bateman* v. *Willoe,* 1 Sch. & Lef. 201; *Loss* v. *Obry,* 7 C. E. Green, 52; *Wingate* v. *Haywood,* 40 N. H. 437.

*C. Sewall,* for the defendant, cited *Fuller* v. *Shattuck,* 13 Gray, 70; *Warren* v. *Comings,* 6 Cush. 163; *Bennett* v. *Hood,* 1 Allen, 47; *Homer* v. *Fisk,* 1 Pick. 435; *Burke* v. *Miller,* 4 Gray, 114; *Bigelow* v. *Winsor,* 1 Gray, 299; *Foote* v. *Gibbs,* Ib. 412; *Stevens* v. *Twite,* 104 Mass. 328, 335; *Walcott* v. *Jones,* 4 Allen, 367; *Elliott* v. *Balcom,* 11 Gray, 286; *Moses* v. *Macferlan,* 2 Burr. 1005, 1009; *Bateman* v. *Willoe,* 1 Sch. & Lef. 201; *Smith* v. *Lowry,* 1 Johns. Ch. 322; *Shottenkirk* v. *Wheeler,* 3 Johns. Ch. 275; *Barnesly* v. *Powel,* 1 Ves. Sen. 119; *Lloyd* v. *London, Chatham & Dover Railway Co.* 2 De G., J. & S. 568; *Dalton* v. *Furness,* 35 Beav. 461; *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80; *Lea* v. *Robeson,* 12 Gray, 280, 285; *James* v. *Bligh,* 11 Allen, 4; *Spurr* v. *Andrew,* 6 Allen, 420; *Cornell* v. *Jackson,* 9 Met. 150; *Cleaveland* v. *Flagg,* 4 Cush. 76; *Sparhawk* v. *Bagg,* 16 Gray, 583; *Allen* v. *Kingsbury,* 16 Pick. 235; *Winslow* v. *Driskell,* 9 Gray, 363.

WELLS, J. From the facts alleged in the bill and established at the hearing, it is manifest that in the writ of entry, 98 Mass. 500, both parties were unaware that the line of fences, by which they and their respective grantors had occupied for twenty-six years, diverged from the line as described in the writ. The agreed statement in that case is inconsistent with any other supposition. It represents the building in controversy to be " on the line of separation between said lots; " and that " the boundary line between the lots was under said building." The disclaimer was filed upon that supposition; whereas in fact the description in the writ was of a line forming one side of a triangle, of which the other two sides were the lines of fence, with the building at

the opposite angle ; thus embracing several acres of land inclosed with the plaintiff's lot, and occupied by his grantors since 1840.

There is nothing to indicate fault or negligence on the part of the plaintiff, in thus mistaking the boundaries of the demanded premises. On the contrary, the conduct of the demandant in that case, now defendant, without imputing to him any intention to deceive, was such as to confirm the plaintiff's erroneous supposition, if it did not give rise to it, and to divert him from scrutiny which might otherwise have disclosed it.

It was such a mistake as would have afforded sufficient ground for a writ of review at law. *Hutchinson* v. *Gurley*, 8 Allen, 23. *Bowditch Insurance Co.* v. *Winslow*, 3 Gray, 415, and cases there cited.

The plaintiff, however, did not discover his mistake until too late to avail himself of his remedy by petition for a review. In this also he is not chargeable with laches. The bill alleges fraudulent concealment by the defendant. But we are inclined to take the allegations in this particular, with the statement of the report that " all the facts alleged in the bill were proved, except " as to the occupation prior to 1840, as establishing nothing more than that having discovered the mistake and intending to take advantage of it, he was silent, and purposely avoided any act which would disclose it to Currier, until the expiration of the time within which a review was open to him.

Active fraud on the part of the defendant is not essential to the relief sought. It is enough that the judgment was the result of a mistake of fact on the part of the plaintiff; that he is deprived of his right of review by the failure seasonably to discover the real character of that judgment, which, though known to the other party, had been purposely concealed from him ; and that without fault or negligence on his own part he is dispossessed of property without an opportunity to maintain his title thereto. To enforce, as an absolute estoppel, such a judgment would be contrary to equity and good conscience. There being no other remedy now open to him, he may have relief in chancery by injunction. 2 Story Eq. § 887. Adams Eq. 197. 2 Dan. Ch. Pract. (4th Am. ed.) 1625. Kerr on Injunctions, 23. *Marine Insurance Co.* v.

*Hodgson*, 7 Cranch, 332.  *Carrington* v. *Holabird*, 17 Conn. 530. *Barnesly* v. *Powel*, 1 Ves. Sen. 284, 289.  *Jarvis* v. *Chandler*, 1 Turn. & R. 319.  We do not undertake, in this suit, to determine the true boundary between the parties.  The relief granted extends no further than to remove from the plaintiff the estoppel which the defendant seeks to set up against him, derived from pleadings and a judgment thereon which were founded in misapprehension and mistake of fact.  Against any use of the record for that purpose there should be a perpetual injunction.

*Decree accordingly.*