# Richmond.

## EPES v. WILLIAMS' ADM'R.

### March 30th, 1893.

BILL OF REVIEW—*Mutual mistake.*—In 1877 a compromise was made between the plaintiffs and the administrator of their guardian, and by consent a decree was entered in a suit pending between them for settlement of his accounts. Administrator was in possession of papers to which plaintiffs were not allowed access, and they were led to believe that the compromise would save long and unprofitable litigation. Plaintiffs ignorantly assigned valuable rights and property for inadequate consideration, and since discovered judgments for large amounts due the estate in adjoining counties, whereof both parties were unaware at time of compromise, and which did not enter therein.

HELD:

       That the decree complained of should be set aside on account of the mutual mistake. *Wheeler* v. *Smith*, 9 How. 55.

Appeal from decree of circuit court of Nottoway county, rendered March 13th, 1891, in a cause under the style of *Epes and Others* v. *Williams and Others.* The decree being adverse to complainants, they appealed. Opinion states the case.

*W. W. & B. T. Crump, S. S. P. Patteson,* and *E. B. Thomason,* for appellants.

*W. H. Mann,* for appellees.

LACY, J., delivered the opinion of the court.

The case is as follows: The appellants filed their bill in the

circuit court of Nottoway county to set aside a final decree in a former ended cause, on the ground of surprise and mistake. The decree sought to be set aside was rendered in the cause of *Epes and Others* v. *Williams and Others,* having the same parties as are here before the court, and was rendered by consent on the 8th day of September, 1879, rendering effectual an agreement of compromise between the parties, approved by the decree of the court at the April term, 1877.

This suit was brought in August, 1888, twenty years after the cause of action accrued in. 1858, and eleven years after the compromise had been agreed on between the parties. The ground for the relief sought is mutual mistake, and surprise on the part of the plaintiffs. The object of the first suit was to have a settlement of the transactions of F. C. Williams as the guardian of the plaintiffs, and as executor of D. G. Williams, deceased, and for decree in favor of the plaintiffs of amount found due them; and the suit was against the administrator of their said guardian and his securities. The parties defendant demurred and answered, and there was a decree for an account, which was executed by one of the commissioners of the court. The amount due wards as of January 1st, 1864, was reported as $16,304.17, and the amount due each, after crediting payments, stated—due J. L. Irby, $11,300.39, Cabell and wife (M. E. P. Epes), $3,251.63, as of March 25, 1864; and, in the alternate, amount due J. L. Irby, January 1st, 1877, $2,258.55; and as to Cabell and wife, March 25, 1864, due to guardian, crediting him with Confederate bond paid, $1,685.68; and alternate statements Nos. 2 and 3. In the latter alternate statement. the balance appearing due executor by Irby, January 1, 1877, was stated at $1,663.03; and as to Cabell and wife, due to the executor, as of February 1, 1864, $2,307.23.

At this stage of the case, at the April term, 1877, the proposition of compromise was made by the plaintiffs, Epes and

wife and Irby, to the administrator of F. C. Williams (as is stated in the paper).

The proposition was:

The plaintiff, John L. Irby, is willing that a decree may be entered in the above-styled cause, in his favor, against the defendants, for $2,331.76, with interest thereon from the 31st day of May, 1874, until paid, in full satisfaction of all his claims and demands against his late guardian, F. C. Williams, not including the trust fund and the interest thereon, which the said F. C. Williams, as executor of D. G. Williams, held for his benefit. The plaintiff, Thomas W. Epes, is willing that a decree may be entered in the above-styled cause, in favor of himself and wife, against the defendants, for $1,000, with interest from this day, in full of claims and demands which the said Thomas W. Epes and his wife, M. E. P. Epes, have against F. C. Williams, late guardian of the said M. E. P. Epes, not including the trust fund and interest thereon, which the said F. C. Williams, as executor of D. G. Williams, deceased, held for the benefit of the said M. E. P. Epes.

> JNO L. IRBY,
> T. W. EPES.

I accept the foregoing proposition, subject to the approval of the court.

> JAMES F. EPES,
> Administrator F. C. Williams.

Which proposition was recommended for acceptance by Mann & Stringfellow and W. H. Mann; when the court, by decree of April term, 1877, ratified and approved the agreement of compromise, and decreed accordingly. And on the 8th day of September, 1879, an agreement was entered into between John L. Irby, T. W. Epes, M. E.

P. Epes, John L. Epes, and J. E. Perkinson, by which were finally settled, as the agreement states, all matters for which said Perkinson and wife can in any way be held liable, and in which Irby and Epes were in any manner interested; and the said Irby and Epes and wife agreed to pay John E. Perkinson, on or before the 7th day of October, 1879, $1,500. And on the 1st day of October, 1879, this agreement, setting forth in much detail and at length the agreement between the parties, was presented to the court, and approved by decree of that day by consent of parties; and it was thereby decreed that J. F. Epes, administrator, assign unto the plaintiffs, as cash, at whatever valuation may be mutually agreed on between them, any or all bonds, accounts, judgments, or decrees in his hands to be collected, as further payments on the debts due them from his intestate, the same to be taken by the plaintiffs, and thereby discharging the said J. F. Epes, as administrator, from all obligation to collect the same or liability therefor in any manner whatever, and, when so assigned, to be the joint property of the said J. L. Irby and Mary E. P. Epes.

The bill in this case seeks to set aside these settlements, on the ground of mutual mistake, and the discovery on the part of the plaintiffs of judgments for large amounts in adjoining counties, of which they had no knowledge, and of which the defendants were also ignorant, and which formed no part of the basis of their contract of settlement, but which plainly show upon their face that they belonged to the fund belonging to them, and which their guardian held *as their guardian,* and to which they are now entitled in justice, because they relinquished their right to these funds without having any knowledge of their existence, and, therefore, without any consideration therefor whatever.

The defendants demurred to this bill, and answered, offering to set aside the compromise if the plaintiffs would refund

the amounts paid under them to the plaintiffs, so that the parties could be restored to their former status.

The circuit court, by the decree appealed from, sustained the demurrer of the defendants, and dismissed the bill of the plaintiffs; whereupon the case was brought to this court by appeal.

The error assigned here is that the circuit court erred in sustaining the said demurrer and dismissing the plaintiffs' bill, and in refusing the opportunity to the plaintiffs to litigate the rights involved in the light of their subsequent discoveries.

The court does not deny the jurisdiction of the court to set aside a final decree in an ended cause upon a bill seeking to set aside such decree for surprise and mistake, but the decision is that this bill states no ground for equitable relief.

If the allegations of the bill are true, and they are admitted to be so for our purposes, the bill presents a strong case of disadvantage on the one side and very great advantage on the other.

The administrator of the guardian and the securities are charged to have been in very close relations, and to have been in possession of papers to which the wards were not allowed access; that the compromise was not submitted by the wards, although it so states; that it came from the other side, and was prepared and urged by them—enforced with the argument that long litigation was impending; that at the end of this no advantage could be obtained, as there were no funds appearing upon their face to be the property of the wards, whereas there were sums to be found in the adjoining counties of very large amount, appearing undoubtedly to belong to the wards; that these sums constitute the bulk of what was theirs, which they ignorantly gave up, and received only a small sum really, and were forced up to pay large exaggerated prices for worn-out lands; and while they were to pay $1,500

in money out of the small sum they were to receive, they were promised evidences of debt of great value, to be assigned by the said administrator of their guardian ; these they have not been able to obtain from the administrator, who still withholds them ; that while they had no knowledge of these things that they were giving away in such quantity, the said administrator and the said sureties had means of knowledge which they did not possess, and that, while they do not charge actual knowledge on the part of the administrator, they insist that the means of knowledge were his, and he ought to have known, from the papers of the guardian, the situation and character of most of his estate—certainly of such large part of the funds in his hands ; that the said James F. Epes had possession of all the papers of F. C. Williams, deceased, and the answer of the said Epes filed in the said suit shows conclusively that he was in close accord with the sureties of the said F. C. Williams, and they all had full access to means of information not accessible to them, and, if they were not fully posted as to all these matters, it was their own fault ; that, in making the compromise, they were led on to its execution by the representations of these parties, and moved by their threats to tie up the estates of their grandfather and their guardian in an expensive litigation for years to come, and yielded to their ruin.

They set forth large sums, since discovered, in detail, aggregating a much larger sum than they nominally received, and they point out in detail large sums represented to them to be good and first-class solvent liens, which appear to be worthless. And they charge that these large sums, ignorantly given away by them, were ignorantly taken away by their antagonists ; that there was a mutual mistake, and that these sums really constituted no part of the motive with either side, and that equity ought to relieve against a wrong to them so severe and ruinous, caused by mistake ; that the parties never entered

into this agreement with such knowledge and information as would make the contract justly a binding obligation.

The appellants cite the case of *Wheeler* v. *Smith,* 4 Howard 55, where the contract of Wheeler to give up an estate of $100,000, upon the advice of the executor, for the sum of $25,000, was set aside by the Supreme Court of the United States, because the parties did not stand upon an equal footing, although Wheeler was a lawyer, though young and inexperienced, the executors being men of weight and influence, and so advising; although the contents of the will, upon the construction of which the question turned, was as well known to Wheeler as to the other side.

There is a similarity in that case with this, as the parties did not stand on the same ground. But this case contains an element of mistake as to material facts not in that.

We think the circuit court erred in sustaining the demurrer to the bill. The parties should have been allowed to develop their case upon the proofs; and, if the allegations of their bill could be established, the case appeals strongly for equitable relief.

And the said decree will be reversed and annulled, and the cause remanded for further proceedings, in order to a final decree in accordance with the just rights of the parties.

DECREE REVERSED.