[S. F. No. 3741.   In Bank.—February 7, 1907.]

## MAMIE C. BACON, Respondent, v. FRANK PAGE BACON et al., Appellants.

DECREE OF DISTRIBUTION—RELIEF IN EQUITY—FRAUD OR MISTAKE—EN-
FORCEMENT OF TRUST.—A decree of distribution of the estate of a
deceased person is subject to review in equity upon a showing that
it was procured by extrinsic fraud or mistake, whereby the court
and the losing party were imposed upon or misled; and an involun-
tary trust may be enforced against the parties who have thereby
obtained an inequitable advantage.

ID.—EQUITY JURISDICTION NOT AFFECTED BY CONCLUSIVENESS OF DECREE
—POWER OF LEGISLATURE — CONSTRUCTION OF CODE. — It is not
within the power of the legislature to divest the jurisdiction in
equity cases conferred by the former constitution upon the district
court, and by the present constitution upon the superior court as
succeeding to the equity jurisdiction of the district court, and that
jurisdiction could not be divested or affected by section 1666 of the
Code of Civil Procedure, making the decree of distribution con-
clusive as to the rights of heirs, legatees, or devisees. That section
should be construed so as to make it constitutional, if reasonably
possible; and it may be reasonably interpreted to mean that it should
have merely the same force and effect as other final judgments,
which are subject to any form of direct attack allowed by law or
by independent suit in equity.

ID.—DIRECT ATTACK IN EQUITY.—A suit in equity to review a judgment
for fraud or mistake is a direct proceeding against the judgment,
and not a collateral attack.

ID.—REMEDY BY MOTION NOT EXCLUSIVE.—The remedy by motion,
under section 473 of the Code of Civil Procedure, within six months
after judgment, to be relieved therefrom, when taken against the
moving party, through his mistake, surprise, or excusable neglect,
though it may include mistake superinduced by fraud of the other
party, is merely cumulative, and does not exclude or displace the
remedy in equity, nor is it an adequate substitute therefor.

ID.—EQUITABLE RELIEF INCLUSIVE OF MISTAKE.—The power of a court
of equity to relieve against judgments is not confined to cases where
they have been procured by fraud, but extends also to judgments
wrongfully given by reason of mistake either of the court or of the
injured party unmixed with fraud, and not the result of the negli-
gence of the injured party.

ID.—MISTAKE IN LEGACY DISTRIBUTED—INCORRECT COPIES OF WILL—
RELIEF IN EQUITY—TRUST.—Where the probated will in fact gave
to plaintiff a legacy of ten thousand dollars, but by mistake of a
copyist of the will typewritten copies thereof were furnished in

which "ten" was mistaken for "two," and the will was represented to all parties and to the court as giving a legacy of only two thousand dollars, and through said mistake, unmixed with negligence of the plaintiff, a legacy of two thousand dollars only was distributed to plaintiff, and the remaining eight thousand went to the residuary legatees, plaintiff may enforce a trust against them and those in interest in the stock of a corporation organized to take their residuary estate.

ID.—RELIANCE UPON STATEMENTS OF PERSONS IN FIDUCIARY RELATIONS. —Where the plaintiff, relying upon the statement of her husband and of the executors, who were also residuary legatees, that the legacy to her was in the sum of two thousand dollars, failed to appear at the distribution, her reliance upon the statements of those who then stood in fiduciary relations to her could not be charged to her as negligence.

ID.—TRUST RELATIONS OF EXECUTORS.—Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary.

ID.—EXTRINSIC FRAUD OR MISTAKE—GRAVAMEN OF RULE—ADJUDICATION OF TECHNICAL ISSUE.—The gravamen of the rule as to extrinsic fraud or mistake lies in the fact that thereby "the unsuccessful party has been prevented from exhibiting fully his case," and consequently that there has been "no adversary trial or decision of the issue," or "no fair submission of the controversy." Where the unsuccessful party has been thus hindered, he is not to be refused relief on the ground that the fact on which his defense or claim in the original action depended, and by which he expects to bring about a different result in the new suit for equitable relief, was technically in issue in the original action or proceeding, or was necessarily decided by the court in that action, and concluded by the judgment beyond reach on collateral inquiry.

ID.—LACHES NOT SHOWN—STATUTE OF LIMITATIONS—DISCOVERY OF MISTAKE.—Where no independent laches was shown, which could have prejudiced the defendants, and nothing appears to have put the plaintiff upon inquiry prior to the actual discovery of the mistake, the statute of limitations only began to run from the time of such discovery.

ID.—EVIDENCE—INTRODUCTION OF ORIGINAL WILL TO SHOW MISTAKE.— In the suit in equity which involves a direct attack upon the judgment on the ground of the mistake, the original will was properly introduced in evidence to establish the mistake and the right of the plaintiff, and to show the injury resulting to her from the erroneous distribution.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

R. Brent Mitchell, and John A. Percy, for Appellants.

Bishop & Wheeler, and W. W. Deamer, for Respondent.

SHAW, J.—On January 19, 1893, Henry D. Bacon died, leaving surviving him his widow, Julia A. Bacon, and three children,—namely, Frank Page Bacon, Ella Etta Bacon Soule, and Carrie Jennie Bacon. His will was duly admitted to probate on March 13, 1893. By its terms the bulk of the testator's property, after payment of debts, was bequeathed to his three children aforesaid. It contained the following clause, out of which this litigation arises, to wit: "If my said estate is worth as much as two hundred and fifty thousand dollars, at my death after payment of liabilities as aforesaid I desire that my legal representatives shall pay to the wife of my said son Frank the sum of ten thousand dollars and to the husband or husbands of my said daughters Ella Etta and Carrie Jennie each the sum of ten thousand dollars." The plaintiff, at that time, was the wife of said son Frank. The estate was worth much more than two hundred and fifty thousand dollars, and she was therefore entitled to the legacy of ten thousand dollars. The three children were appointed executor and executrices of the will and duly qualified and acted as such. Shortly after the testator's death, and before the will was probated, the children and other parties interested, except the plaintiff, met for the purpose of reading the will. In reading it, by mistake the word "ten" was read as "two" where it occurs in the above-quoted clause. This mistake was carried into all the subsequent proceedings, was not perceived by any of the interested parties or any person concerned in the administration, the respective legacies were paid as legacies of two thousand dollars each, and that sum was accepted and receipted for as payment in full by the plaintiff, all parties then believing that the legacies were each for two thousand dollars only, and a petition for distribution was thereafter filed, notice thereof duly given, and a decree of final distribution of the estate made on December 18, 1896, reciting the said legacy as a legacy for two thousand dollars, declaring its full payment and distributing the residue to the defendant, Bacon Land and Loan Company, a corporation

organized to receive and hold the property of the estate, to which said residuary legatees had theretofore conveyed their respective interests in exchange for a proportionate amount of the corporation stock. It is also claimed that this decree was obtained by fraud as well as by reason of the mistake above mentioned.

This suit was begun on July 31, 1899, against the residuary legatees above named, both in their individual and representative capacities. The widow and the said corporation are also made parties defendant. The object of the action is to obtain a judgment declaring that the legacy bequeathed to plaintiff by the will was ten thousand dollars; that of that sum eight thousand dollars, with interest, remains unpaid; that the decree of distribution with respect to the recitals that the legacy was two thousand dollars and was satisfied be held void; that the said sum of eight thousand dollars and interest be declared a lien and charge on the property of said estate so distributed to said corporation, or on the stock of said corporation issued to said legatees in exchange for said property, in case the property could not be charged; that said property or stock be declared to be held in trust for plaintiff, so far as may be necessary for the payment of the said balance with interest; and that if not paid, then that said property be sold and payment made out of the proceeds.

The court gave judgment substantially as prayed for against the three residuary legatees, declaring said balance and interest a lien and charge on the stock of said corporation belonging to them, and that they held said stock in trust for the plaintiff, so far as should be necessary for the payment of the balance, enjoining any transfer by them and providing for its sale to satisfy said lien. It also gave personal judgment against said legatees in favor of plaintiff for the amount of said balance and interest and declared her receipt for full payment canceled. The court refused to declare a lien or charge against the property of the estate held by the corporation, and gave judgment in favor of said corporation for its costs. From this judgment and from an order denying their motion for a new trial the said Frank Page Bacon, Ella Etta Bacon Soule, and Carrie Jennie Bacon appeal.

There is also an appeal by the same parties as personal representatives of the deceased Henry D. Bacon, they having

never been discharged from that trust. There is no judgment against them in that capacity, except so far as the judgment declaring void the recitals in the decree and canceling the receipts may be so construed. Their interests in that capacity are concerned only so far as that part of the judgment may require further proceedings in the administration of the estate. This appeal has not been argued by either party and need receive no further consideration here.

The first proposition of the appellants is that the superior court had no jurisdiction of the subject-matter of the action. The complaint states a cause of action of the class formerly cognizable in equity and now within the jurisdiction of the superior courts by virtue of the constitutional grant to those courts of "original jurisdiction in all cases in equity." (Art. VI, sec. 5.) The appellants claim that decrees of distribution constitute an exception to the general rule, and cannot be reviewed in equity upon the ground of fraud or mistake.

1. The proposition that a decree of distribution is subject to review in equity upon a showing that it was procured by fraud or mistake appears to be settled by the decisions of this court in *Baker* v. *O'Riordan,* 65 Cal. 368, [4 Pac. 232]; *Sohler* v. *Sohler,* 135 Cal. 323, [87 Am. St. Rep. 98, 67 Pac. 282]; *Estate of Hudson,* 63 Cal. 457; *Dean* v. *Superior Court,* 63 Cal. 478; *Winegerter* v. *Winegerter,* 71 Cal. 110, [11 Pac. 853]; and *Buckley* v. *Superior Court,* 102 Cal. 10, [41 Am. St. Rep. 135, 36 Pac. 360]. In *Baker* v. *O'Riordan,* 65 Cal. 368, [4 Pac. 232], a decree of distribution to the defendant had been obtained by the consent of an attorney, who, fraudulently and without authority, appeared for Baker, who was entitled as husband of the decedent. It was a case of the kind described in *United States* v. *Throckmorton,* 98 U. S. 65, as a case, "where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat," and which is classed therein as among the instances of fraud for which a new suit would be sustained to set aside the judgment so obtained. In regard to the jurisdiction this court, in *Baker* v. *O'Riordan,* said: " 'The equitable jurisdiction to cancel and set aside or to restrain judgments and decrees of any court obtained by a fraud practiced upon the court and the losing party, is well settled and familiar' (2 Pomeroy's Equity Jurisprudence, 919). . . . We have no doubt of the right

CL Cal.—31

of the plaintiff under the findings, to have the decree assigning his share of the estate of his wife to the defendant canceled and set aside.'' In *Sohler* v. *Sohler,* 135 Cal. 323, [87 Am. St. Rep. 98, 67 Pac. 282], the plaintiff sued to set aside a decree of distribution induced by the fraud of the defendants, coupled with the mistake or ignorance of the plaintiff, the ignorance being also the result of the fraud. The court below had sustained a demurrer to the complaint. The supreme court reversed the judgment, held that the superior court had jurisdiction of the action and power to review the decree of distribution, and to declare that the defendants held as involuntary trustees of the plaintiff the property improperly vested in them by the decree. This is substantially the same relief as that given in the case at bar. The other cases above cited contain declarations similar in effect to the above quotation from *Baker* v. *O'Riordan,* and, although they may be *obiter dictum,* we think they correctly state a settled rule of equity jurisprudence.

The decisions cited by the appellants are not in conflict with these conclusions. In *Langdon* v. *Blackburn,* 109 Cal. 19, [41 Pac. 814], it seems to have been conceded that while the probate of a will could not be reviewed in equity, a decree of distribution was subject to such attack in a proper case of extraneous or collateral fraud, and it was held that the showing of such fraud in that case was insufficient. *William Hill Co.* v. *Lawler,* 116 Cal. 360, [48 Pac. 323]; *Jewell* v. *Pierce,* 120 Cal. 79, [52 Pac. 132]; *Cunha* v. *Hughes,* 122 Cal. 111, [68 Am. St. Rep. 27, 54 Pac. 535]; and *McKenzie* v. *Budd,* 125 Cal. 600, [58 Pac. 199], were collateral attacks upon decrees of distribution, and they simply announce that the well-known rule protecting judgments against collateral attack, except for want of jurisdiction, is applicable to such decrees. They have no bearing on the question. *Goad* v. *Montgomery,* 119 Cal. 552, [63 Am. St. Rep. 145, 51 Pac. 681], and *In re Trescony,* 119 Cal. 568, [61 Pac. 951], merely decide that the decree of distribution supersedes the will, and that so long as the decree stands unreversed by any direct attack the will cannot, in any collateral inquiry, be used to impeach the decree. *Toland* v. *Earl,* 129 Cal. 148, [79 Am. St. Rep. 100, 61 Pac. 914], was an action in the superior court to construe a will and obtain a decree directing the same

court as to the manner in which it should distribute the estate then in course of administration in that court. It was held that such a proceeding in equity was no longer necessary; that the same relief could be obtained from the same court in the regular course of the probate proceedings; that the former jurisdiction of equity was now exercised through the same court by means of the proceeding for distribution, or a proceeding under section 1664 of the Code of Civil Procedure, which were made the exclusive modes of obtaining a judicial construction of a will. *Lynch* v. *Rooney*, 112 Cal. 282, [44 Pac. 565], was an attempt to review a decree of distribution and declare an involuntary trust, upon a showing that the decree was procured by false or mistaken testimony. The case is one of the class where the fraud or mistake is intrinsic. In such cases no relief can be given. (*Pico* v. *Cohn*, 91 Cal. 133, [25 Am. St. Rep. 159, 25 Pac. 970, 27 Pac. 537]; *United States* v. *Throckmorton*, 98 U. S. 65.) If the latter part of the opinion in this case was intended to declare that such decrees may not be reviewed for extrinsic fraud in procuring them to be made, it must be considered as overruled by the decision in *Sohler* v. *Sohler*, 135 Cal. 323, [87 Am. St. Rep. 98, 67 Pac. 282]. In *Mulcahey* v. *Dow*, 131 Cal. 73, [63 Pac. 158], the opinion concedes that a distributee may in a proper case be held as an involuntary trustee, but decides that the fraud there shown was not extrinsic or collateral.

It is urged, with respect to the jurisdiction, that decrees of distribution, being a part of the same probate proceeding as the decree probating the will, must be governed by the same rule, and that, as in *State* v. *McGlynn*, 20 Cal. 231, 262, [81 Am. Dec. 118], and *Kieley* v. *McGlynn* (Broderick's will), 88 U. S. 503, it was decided that decrees probating wills are not subject to review in equity for fraud or mistake, it would follow that a decree of distribution cannot be so reviewed. In view of the decisions we have cited to the contrary, this proposition is clearly untenable. Furthermore, the rule denying such power to review the probate of a will, while it is declared by the above decisions, and perhaps by the greater number of decisions elsewhere, is universally admitted to be an exception to the general rule that all final judgments are subject to such attack. The reasons given in support of the exception are generally declared in the opin-

ions to be unsatisfactory and illogical, and the discussions usually end with the statement that, whether for good reasons or not, the exception is firmly established and upon that ground must be adhered to. An exception so poorly supported by reason should not be extended to a new class of cases.

2. It is further claimed that such review is prohibited by the provisions of section 1666 of the Code of Civil Procedure, which on this point are as follows: "In the order or decree, the court must name the persons and proportions or parts to which each shall be entitled. . . . Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." The proposition proves too much. It necessarily concedes that such jurisdiction is conferred by the constitution, and would remain in the superior court but for this statute, which is supposed to divest it. The legislature does not possess power to divest the court of its constitutional jurisdiction. It may change the practice or procedure, the mere method by which the jurisdiction is exercised (*Ex parte Harker,* 49 Cal. 467), but it cannot take away the jurisdiction entirely, nor substantially impair it. No adequate new procedure has been provided for the exercise of this jurisdiction, and, if it exists at all, it must be exercised by the long-established method of an independent suit.

It is true that section 473 of the Code of Civil Procedure provides that upon motion in the same cause or proceeding, instituted within six months after judgment, a party may be relieved from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect. This would undoubtedly also include mistake superinduced by the fraud of the other party, and it does provide a new method whereby some relief can be obtained on motion, similar to that here sought by an independent suit. But this provision has never been considered as an exclusive method for the exercise of the equity jurisdiction, nor as an adequate substitute for the right to proceed by action. It is a cumulative remedy, and does not displace the remedy in equity. (*Baker v. O'Riordan,* 65 Cal. 368, [4 Pac. 232].) We have recently held not only that it does not displace the equitable remedy, but also that an adverse decision on such a motion does not

necessarily bar a subsequent suit to vacate the judgment for the same cause. (*Estudillo* v. *Security L. and T. Co.,* 149 Cal. 556, [87 Pac. 19]. Also, Freeman on Judgments, sec. 511; *Simpson* v. *Hart,* 14 Johns. 63; *Wistar* v. *McManus,* 54 Pa. St. 318, [93 Am. Dec. 700].) It follows that the jurisdiction still remains, notwithstanding the provisions of that section.

It is suggested that at the time the present constitution was adopted section 1666 was in force, and that its effect was that courts of equity were thereby deprived of jurisdiction to vacate decrees of this class, that the jurisdiction in equity conferred by the constitutional grant must be understood to include only the jurisdiction as then existing and as limited by that section, and, hence, that it did not include the power to vacate judgments in cases of this class. To this there is a sufficient answer. The grant of this jurisdiction is not a new provision. It was conferred upon the district courts by the constitution of 1849, in identical language, and this had been construed to give that court the same jurisdiction as that formerly possessed by the equity courts. (*Sanford* v. *Head,* 5 Cal. 298; *People* v. *Davidson,* 30 Cal. 391; *Rosenberg* v. *Frank,* 58 Cal. 400.) In *Sanford* v. *Head,* 5 Cal. 298, it was held that this jurisdiction included power to set aside a judgment for fraud, and in *Baker* v. *O'Riordan,* 65 Cal. 368, [4 Pac. 232], this doctrine was applied to a decree of distribution. Hence, this provision of section 1666, if we consider that it was intended to divest a part of this equity jurisdiction, must have been unconstitutional and void in 1866, when it was first enacted. (Stats. 1865-1866, p. 767.) The constitution of 1879 gave the jurisdiction to the superior court by the use of the same language as that of 1849, and it must be construed to have the same effect. The effect of the words used cannot be changed and the jurisdiction limited by reference to a void statutory provision having only a nominal existence at the time of the adoption of the new constitution. The grant of jurisdiction in all cases in equity made in 1879 was of the same effect as the similar grant in 1849, and conferred upon the superior courts the jurisdiction previously vested in the district courts, and, therefore, it was unaffected by the void statute.

We think, however, that section 1666 was not intended to have the effect claimed. A statute should be so construed as to make it constitutional, if it is reasonably possible. (*People* v. *Frisbie*, 26 Cal. 139; *French* v. *Teschemaker*, 24 Cal. 554.) The provision may reasonably be interpreted to mean no more than that the decree of distribution should have the same force and effect as other final judgments,—that is to say, that it should not be subject to collateral attack, but only to direct attack on appeal, or as otherwise provided by law. This construction was in effect given to it by the decision in *De Pedrorena* v. *Superior Court*, 80 Cal. 144, [22 Pac. 71]. The rigid construction contended for would as completely cut off the power of the court to vacate such decree upon proceedings by motion under section 473 of the Code of Civil Procedure as it would the power of review by a suit in equity. Yet in that case it was held that the court had power to set aside a decree of distribution, on motion under section 473, begun within six months after its rendition, notwithstanding the provision of section 1666 aforesaid. Thus, in effect, it declared that the latter section does not exclude any form of direct attack. A suit to review a judgment for fraud or mistake is a direct proceeding against such judgment, and not a collateral attack. (*Bergin* v. *Haight*, 99 Cal. 56, [33 Pac. 760].)

We conclude that the provisions of section 1666 do not prevent a review of a decree of distribution by a suit in equity, in a proper case.

3. It is urged that the power to review judgments extends only to cases where they have been procured by fraud, and that it does not exist with respect to a judgment wrongfully given by reason of mistake either of the court or of the injured party. No such distinction is recognized by the authorities. The text-books all declare that such relief can be given where the former judgment was the result of a mistake unmixed with fraud, and not the result of the negligence of the injured party. (Black on Judgments, sec. 381; 2 Freeman on Judgments, sec. 500; 2 Story's Equity Jurisprudence, sec. 885; 2 Beach on Injunctions, sec. 701; 2 Pomeroy's Equity Jurisprudence, sec. 871; 3 Pomeroy's Equity Jurisprudence, sec. 1376, 1377; 16 Am. & Eng. Ency. of Law, p. 383; 1 High on Injunctions, sec. 209 et seq.) Indeed, the cases on the

subject of mistake allow relief from a judgment where the sub-
ject-matter of the mistake approaches more closely the actual
merits of the former inquiry than in cases of fraud. In
*Quivey* v. *Baker,* 37 Cal. 465, and *Busey* v. *Moraga,* 130 Cal.
588, [62 Pac. 1081], a mortgage by mistake described a lot
not owned by the mortgagor, instead of the one intended.
It was foreclosed and the same mistake was inadvertently
carried into the judgment, the sale, and the sheriff's deed.
It was held that an action would lie to correct all the mis-
takes, including the mortgage, the judgment, and the deed.
In *Gerig* v. *Loveland,* 130 Cal. 512, [62 Pac. 830], one who
held two mortgages for the same debt, by mistake foreclosed
the first alone, which covered less property than the second,
and was insufficient to pay the debt. The court declared that
he could maintain an action to cancel the first decree, and
to foreclose the second mortgage against a subsequent judg-
ment creditor, thus avoiding the bar of section 726 of the
Code of Civil Procedure, allowing but one action on a debt
secured by mortgage. In *Merrill* v. *Bank,* 94 Cal. 59, [29
Pac. 242], a judgment by default was rendered against two
makers of a note. One of them afterwards discovered that
the note had been fully satisfied by the other before the suit
was begun. An action by him to set aside the judgment,
or to have it declared satisfied as to him, was sustained, it
appearing that he was not negligent in failing sooner to dis-
cover the defense. *Ford* v. *Ford,* 1 Walk. (Miss.) 505, [12
Am. Dec. 587], is substantially to the same effect. In *Cohen*
v. *Dubose,* 1 Harp. Eq. 102, [14 Am. Dec. 709], there was a
trial by jury in an action at law on a note. The note was
given in evidence and the jury returned a verdict for plain-
tiff for the amount of the principal thereon, the interest
being omitted by their mistake. It was held that the plaintiff
could maintain a suit in equity to correct the mistake and
compel payment of the interest, and that the testimony of
the jurors could be introduced in proof of the mistake. Chief
Justice Marshall, in *Marine I. and S. Co.* v. *Hodgson,* 7
Cranch, 336, states the rule thus: "It may safely be said
that any fact which clearly proves it to be against conscience
to execute a judgment, and of which the injured party could
not have availed himself in a court of law; or of which he
might have availed himself at law, but was prevented by

fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of equity. On the other hand, it may with equal safety be laid down as a general rule that a defense cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of that court that the defense ought to have been sustained at law."

We are satisfied that the court below had power to entertain the suit and give the relief awarded by the judgment appealed from. It remains for us to consider the case upon its merits.

4. A photographic copy of the will is inserted in the record. Upon a casual reading a person of ordinary skill in deciphering penmanship might easily mistake the word "ten," in the two places where it appears therein, for the word "two," and believe that the legacies were each for two thousand dollars. But upon a careful reading, and especially upon a comparison with the formation of the same letters in other parts of the will, and without the aid of a microscope, no person of experience could doubt that the word is "ten," and that the legacies are each for ten thousand dollars and not for two thousand dollars. Without doubt the testator did bequeath to the plaintiff a legacy of ten thousand dollars. The original will was filed and probated as it was written by the testator, and, consequently, the estate exceeding two hundred and fifty thousand dollars, the probate of the will clearly established that the plaintiff was entitled to a legacy of ten thousand dollars.

At the time of the first reading of the will, when the words "ten" were erroneously read by all parties present as "two," the attorney of the executors was present, and was directed by them to have typewritten copies of the will made and sent to the parties interested. This was immediately done, the copyist by mistake writing the amount of the legacy as "two thousand dollars." Thereafter these copies were used in the subsequent proceedings, and the original will was not again carefully read or examined by any person until some three years after the estate was distributed. Thus the mistake was perpetuated and repeated in the final decree. The plaintiff did not expect that any legacy would be left to her, and did not know that anything was given to her by the will, until she

was informed by her husband shortly after the first reading thereof. He told her that it gave her a legacy of two thousand dollars. A day or two later she received the copy from the executors, which gave her the same information. She had every reason to believe that the information was correct. It came from those on whom she had a right to rely. We may presume that she had been accustomed to rely on her husband, and had found him trustworthy. She did rely on them, and believed that the legacy was in fact two thousand dollars, and during the whole course of the administration she had no occasion for even a suspicion that it was otherwise. Under these circumstances the court properly found that she cannot be charged with neglect in failing to discover the mistake.

Furthermore, the information came from persons occupying fiduciary relations toward her. Her husband first informed her, and she then received the copy from the executors. Afterwards, and before the petition for distribution was filed, upon her request for payment of the supposed balance of her legacy, the individual defendants in their representative capacity, prepared a receipt in full, in effect stating therein that the balance of the principal of her legacy was but fifteen hundred dollars (five hundred dollars having been previously paid), which they presented to her and demanded that she should sign upon payment of said balance, which she did, and the supposed balance was then paid by them to her. This was equivalent to a statement by them that her legacy was but two thousand dollars. Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary. (1 Story's Equity Jurisprudence, sec. 218; *Robins* v. *Hope,* 57 Cal. 497.) They were also residuary legatees, and hence whatever was lacking in full payment to the plaintiff was so much gained to them. They are therefore not in any position to claim that the plaintiff, in relying on their own statements regarding the amount of the legacy, was lacking in diligence.

At the hearing of the petition for distribution the original will, in the handwriting of the testator, was on file, but it was not produced, examined, or read by or to the court. The petition was prepared from one of the typewritten copies of the will. It stated the legacy as for two thousand dollars,

and that it had been fully paid. This statement was read or stated to the court by the attorney for the executor and executrices, and he also then stated that it was a correct statement of the contents of the will. The court accepted his statement as true and gave judgment for distribution accordingly. That all parties concerned, including the court, were acting under the influence of the mistake is unquestionable. It is claimed that it is not extrinsic or collateral to the case that the amount of the legacies and the purport and effect of the will were the precise things which the court was to ascertain and determine by the judgment, and that the mistake in reading the will was a mistake of the court, intrinsic to the action, which cannot be reviewed in any other court.

If the plaintiff had been present at the hearing, contending that the will gave her ten thousand dollars, had presented the point to the court, and the court had thereupon read the word "ten" as "two," and had made the distribution as it was made by the judgment appealed from, no doubt she would be precluded from any relief by way of equitable review, no matter how plain the mistake of the court would appear. The mistake would then be a mere error in the consideration of the evidence in a case fully presented to the court, an error of the class which human tribunals are subject to in any case, and which cannot be reviewed in equity. There would also be a complete remedy at law. The party injured would have timely notice of the error and could pursue the usual mode of review by motion for a new trial and appeal.

The general rule as to what constitutes extrinsic fraud or mistake is clearly stated by the United States supreme court in *United States* v. *Throckmorton,* 98 U. S. 65. After stating the general rule that a bill in equity will not lie to set aside a judgment obtained by means of perjured testimony or forged documents, introduced in evidence in support of a contested issue of fact, that court says: "But there is an admitted exception to this general rule, in cases where, by reason of something done by the succesful party to the suit, there was, in fact, *no adversary trial or decision of the issue in the case.* Where the unsuccessful party has been *prevented from exhibiting fully his case,* by fraud or deception practiced upon him by his opponent, as by keeping him away from court; a false promise of a compromise; or where the

defendant had never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interests to the other side,—these, and *similar cases which show that there never has been a real contest at the trial or hearing of the case,* are reasons for which a new suit may be sustained to set aside the former judgment or decree ·and open the case for a new and fair hearing." (The italics are ours.)

This statement was approved by this court in *Pico* v. *Cohn,* 91 Cal. 135, [25 Am. St. Rep. 159, 25 Pac. 970, 27 Pac. 537]. These cases refer to fraud as the preventing cause of the real contest, adversary trial, or fair submission. The cases related to fraud, and hence the discussion was confined to that subject, but the rule is the same where the preventing cause is mistake, influencing the action or inaction of the injured party. (*Bibend* v. *Kreutz,* 20 Cal. 114; *Merrill* v. *Bank,* 94 Cal. 59, [29 Pac. 242]; *Marine I. and S. Co.* v. *Hodgson,* 7 Cranch, 336; *Ford* v. *Ford,* 1 Walk. (Miss.) 505, [12 Am. Dec. 587]; *Wilson* v. *Boughton,* 50 Mo. 17; *Drew* v. *Clarke,* Cooke (Tenn.) 373, [5 Am. Dec. 698]; *Rust* v. *Ware,* 6 Gratt. 50, [52 Am. Dec. 100]; *Currier* v. *Esty,* 110 Mass. 536; *Epes* v. *Williams,* 89 Va. 794, [17 S. E. 235]; *Busey* v. *Moraga,* 130 Cal. 586, [62 Pac. 1081]; note to *Oliver* v. *Pray,* 19 Am. Dec. 605. See, also, the citations to the text-books under subdivision 3 of this opinion.)

The gravamen of the rule thus expressed lies in the fact that "the unsuccessful party has been prevented from exhibiting fully his case," and, consequently, that there has been "no adversary trial or decision of the issue," no "real contest at the trial," or, as stated in *Pico* v. *Cohn,* no "fair submission of the controversy." Where the unsuccessful party has been thus hindered he is not to be refused relief on the ground that the fact on which his defense or claim in the original action depended, and by which he expects to bring about a different result in the new suit for equitable relief, was technically in issue in the original action or proceeding, or was necessarily decided by the court in that action and concluded by the original judgment beyond reach on collateral inquiry. It is because such judgment does conclude all par-

ties so long as it stands unrevoked and unaffected by any direct attack, not only as to the facts actually in issue, but also as to all facts not in issue, but which might constitute a possible defense, and because it is therefore injurious, that there is ground for the interposition of equity to give this form of relief. To deny relief where the fact is technically in issue, though, by reason of the mistake or fraud, not controverted or contested at the trial or hearing, would be to destroy the equitable remedy in a large class of cases in which it has been hitherto administered.

The case at bar comes fully within these principles. The plaintiff, by reason of the common mistake, believed that her legacy was only two thousand dollars, instead of ten thousand dollars, as it was in fact. She had been fully paid the two thousand dollars, which she believed to be the extent of her demand. Her claim was, as she supposed, satisfied, and she was thereby fully justified in assuming that she had no further concern with the estate and no interest in the distribution. As we have seen, the mistake was not caused by her culpable negligence. In this state of mind she would properly consider that she should not appear in the proceeding in which she had no interest. One who has no defense to an action against him, or no interest in a proceeding in which he is cited, is not negligent or chargeable with laches in failing to appear therein, but is thereby doing his legal duty to the court. The plaintiff testified, in substance, that if she had not been misinformed in regard to the amount of her legacy, she would have made inquiry about it. The court below was justified by the circumstances disclosed by the evidence, as well as by this direct testimony, in finding that by reason of her mistake as to the contents of the will the plaintiff was induced to refrain from appearing in the proceeding for distribution and there contesting the statement that her legacy was but two thousand dollars, and claiming the true amount thereof. It is therefore a fact that by reason of this mistake she was prevented from exhibiting fully her case, and that, as the result, there was no adversary trial, no real contest, and no fair submission of the question whether her legacy was two thousand dollars or ten thousand dollars. The obvious result was the decision of the court, based on the uncontested facts set forth in the petition for distribu-

tion, that the plaintiff had been paid in full, with the corresponding decree distributing to the residuary legatees eight thousand dollars of the money of the estate which of right belonged to the plaintiff. The mistake of the plaintiff which led to this injury, was clearly caused by matters extraneous and collateral to the merely formal inquiry made by the court upon the hearing.

The court further found that her failure to appear was induced by both the actual and constructive fraud of the defendants. We do not find it necessary to consider the sufficiency of the evidence to support these respective findings of fraud. There is sufficient proof of mistake, as we have shown, and the judgment is fully sustained by the findings on that subject.

The plaintiff was not guilty of neglect or laches in the delay in beginning the present action. She did not discover the mistake until a short time before the action was begun. We do not find anything in the evidence which would necessarily put her on inquiry as to the amount of the legacy, or cause her to suspect that there had been a mistake concerning it. The dissensions between herself and her husband, and their consequent separation, occurring shortly before the time of the last payment upon the legacy, and the subsequent divorce, had no reference to the legacy or to the will, and were not of a character to arouse in her a suspicion that her previous information from him concerning it was false, or to raise a doubt of the good faith of the other defendants. She testified that she had no such doubt or suspicion. The delay does not appear to have been in the least injurious or prejudicial to the defendants in respect to their defense in this action, or in any other respect, and, therefore, one element of laches, as distinguished from the bar of the statute of limitations, is wanting. (*Cahill* v. *Superior Court,* 145 Cal. 47, [78 Pac. 467] ; *Mayer* v. *Mayor,* 63 N. Y. 455; *Lawrence* v. *American Nat. Bank,* 54 N. Y. 432; *Nat. Bank of Commerce* v. *Nat. Mechanics' Bank,* 55 N. Y. 211, [14 Am. Rep. 232] ; *Snyder* v. *Ives,* 42 Iowa, 157; *United States Bank* v. *Georgia,* 10 Wheat. 333, 349.)

The action was not barred by the statute of limitations. The plaintiff had no actual knowledge of the mistake prior to the distribution, nor until the accidental discovery, shortly

before the action was begun. The statute did not begin to run until that discovery occurred. The causes which produced the cessation of the intimate relations between plaintiff and the defendants did not put plaintiff upon inquiry to the extent necessary to charge her with constructive notice of the mistake prior to the actual discovery. The differences between them, as we have stated, would not necessarily affect her confidence in the honesty and integrity of the defendants in respect to the administration of the estate.

There are other particulars wherein it is claimed that the evidence does not sustain the findings, but it is not necessary to discuss them in detail. A careful consideration of the evidence in the record satisfies us that it is sufficient to prove all the facts necessary to support the judgment.

The will was competent evidence to prove the mistake, the right of the plaintiff, and the injury to her from the erroneous distribution. Decisions holding that a will is not admissible on collateral inquiry, after probate and distribution, to prove that it was disregarded, or incorrectly construed, by the court in making distribution of the estate, have no application here. This is not a collateral attack on the decree of distribution. It is a direct attack thereon. (*Bergin* v. *Haight,* 99 Cal. 56, [33 Pac. 760].) In such direct proceedings to impeach the decree the will is competent evidence to prove the error and the injury. It is unnecessary to discuss the other errors of law assigned. They are either not well taken, or they do not affect the result.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.