[Civ. No. 13428. First Dist., Div. One. Nov. 3, 1947.]

MILTON P. DUFFY, Respondent, v. LESTER CLARENCE DUFFY et al., Minors, Appellants.

Manny C. Gomez and Robert E. Hayes for Appellants.

Harold F. Riede, Thomas P. Boyd and Freitas, Duffy & Keating for Respondent.

BRAY, J.—The principal question to be determined is the validity of the court's action in sustaining without leave to amend plaintiff's demurrer to defendants' second amended cross-complaint (erroneously denominated third amended cross-complaint) and granting the motion to strike the same.

The case involves certain real property and two garage businesses in Marin County. Plaintiff filed a quiet title action against his nephew and niece. The complaint was in the usual form and alleged that plaintiff was the owner of the real property and businesses and that defendants claimed interests therein which were without right. Defendants answered, denying plaintiff's ownership, and asserting their interests as set forth in their cross-complaint. Demurrers to the cross-

complaint, the first amended cross-complaint and the second amended cross-complaint, were sustained, the latter without leave to amend. A motion to strike this amended cross-complaint was likewise granted.

The second amended cross-complaint alleges that cross-complainant Lester Clarence Duffy is 11 years of age, and cross-complainant Dorothy Julia Duffy, 12; that their mother was appointed their guardian *ad litem*. It alleges that plaintiff is the uncle of cross-complainants and stood in a relationship of trust, confidence and advisor to them and their mother; that Stuart Henry Duffy, the brother of plaintiff and uncle of cross-complainants, died on February 20, 1940, leaving a will in which Stuart devised the whole of his estate to plaintiff in trust for cross-complainants; that the estate of Stuart consisted of a half-interest in the real property and garage businesses described in plaintiff's complaint; also certain moneys in the bank and other moneys and personal property unknown to cross-complainants; that the will was admitted to probate March 15, 1940, and plaintiff appointed executor thereof; that on September 17, 1940, plaintiff returned and filed an inventory in which the estate was appraised at $6,486.06, consisting of the following: cash $1,379.81; an interest in said garage businesses appraised at $100; a record 13/48th interest in one parcel of the real property appraised at $4,306.25, and a record interest in the other parcel appraised at $700; that plaintiff as such executor presented his first and final account and petition for distribution to the court, which on November 29, 1940, entered its order settling the account; that at the time of presentation and hearing of said account plaintiff failed to disclose and concealed the true facts from the court and cross-complainants and wilfully and in bad faith suppressed the facts and falsely and fraudulently and with intent to appropriate to his own use the estate of cross-complainants under the will of Stuart Duffy, represented to the court that the interest of Stuart was only nominal when in fact it was substantial and valuable far in excess of its appraised value; that the estate had no assets other than as inventoried and that all of the title to the real property and the businesses had been conveyed by Stuart to plaintiff on or about October 10, 1927; that the court, relying on these representations, settled the account and decreed that all of the assets of Stuart's estate except cash in the sum of $1,379.81 was the property of plaintiff free from any trust; and that plaintiff was wrongfully retaining and claiming said property and businesses.

In a second cause of action, after incorporating all the matters set forth in the first cause of action, it is alleged that on September 1, 1940, at the State Building in San Francisco, plaintiff represented to the mother of said cross-complainants that he would protect their interests in the Stuart estate, and "take care of everything in connection therewith"; that because of the relationship between plaintiff and cross-complainants, and by virtue of the position of trust and confidence in which he stood towards them, cross-complainants and their mother were lulled into a sense of security until January 25, 1945, when they first learned that the whole of the Stuart estate, except the cash above mentioned, had been distributed to plaintiff.

In a third cause of action, after incorporating all the allegations of the first cause of action, it is alleged that on September 1, 1940, at the State Building in San Francisco, plaintiff falsely, fraudulently, with intent to deprive cross-complainants of their rightful inheritance, represented to their mother that he would hold all property received by him from the Stuart estate in trust for them and that relying upon these representations neither cross-complainants nor their mother appeared in opposition to plaintiff's final account and petition for distribution.

In a fourth cause of action, after incorporating all the allegations of all preceding causes of action, it is alleged that by reason of the fraud and deceit and his violation of trust, plaintiff had wrongfully obtained possession of the property and businesses and other property, the exact nature of which is unknown to cross-complainants, and is therefore, and has been since February 20, 1940, a voluntary trustee for the benefit of cross-complainants.

A fifth cause of action incorporates certain allegations of the first cause of action and alleges that cross-complainants jointly own and have a right to the possession of half of the real property and businesses and that plaintiff is unlawfully and without right withholding the same.

A sixth cause of action incorporates certain allegations of the first cause of action and alleges that cross-complainants are jointly the owners of half of the property and businesses and that the claim of plaintiff to a sole ownership therein is without right and he has no interest therein.

The sustaining of the demurrer and the granting of the motion to strike was upon the theory that if any fraud was alleged in the cross-complaint it was intrinsic fraud and not

extrinsic, and therefore, the cross-complainants could not in this proceeding attack the validity of the decree of distribution.

"The final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud or mistake is extrinsic rather than intrinsic. [Citing cases.]" (*Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105].) What is extrinsic as distinguished from intrinsic fraud is clearly set forth in *Bacon* v. *Bacon,* 150 Cal. 477, at page 490 [89 P. 317]: "The general rule as to what constitutes extrinsic fraud or mistake is clearly stated by the United States supreme court in *United States* v. *Throckmorton,* 98 U.S. 65 [25 L.Ed. 93]. After stating the general rule that a bill in equity will not lie to set aside a judgment obtained by means of perjured testimony or forged documents, introduced in evidence in support of a contested issue of fact, that court says: 'But there is an admitted exception to this general rule, in cases where, by reason of something done by the successful party to the suit, there was, in fact, *no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced upon him by his opponent, as by keeping him away from court;* a false promise of a compromise; or where the defendant had never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interests to the other side,—these, and *similar cases which show that there never has been a real contest at the trial or hearing of the case,* are reasons for which a new suit may be sustained to set aside the former judgment or decree and open the case for a new and fair hearing.' (The italics are ours.)" (Additional italics added.)

The test then is whether it appears from the allegations of the cross-complaint that the cross-complainants were prevented from appearing in the estate proceeding by fraud or deception practiced upon them by plaintiff. While the second amended cross-complaint is not a model of pleading, it does allege these very matters. It sets forth in effect that plaintiff bore three relationships to cross-complainants; that he was their uncle, the trustee appointed for them by their Uncle Stuart, and the executor of Stuart's estate of which

they were the sole beneficiaries; that he represented to cross-complainants' mother "that he would protect the interest of cross-complainants in the estate of said Stuart Henry Duffy and that he would take care of everything in connection therewith," and that because of his relationship to them and their trust and confidence in him, they were lulled into a sense of security. Again, it is alleged that he represented to them that he would hold in trust for them all property received by him from the estate, and that relying upon his representations they did not appear in the estate proceedings. Certainly, the nephew and niece, by reason of the blood and other confidential relationships, had the right to rely upon their uncle's representation that he would take care of their interests in the estate. It was those representations that kept them from appearing in the estate, and if, as alleged, they were false, it constitutes extrinsic fraud.

*Bacon* v. *Bacon, supra* (150 Cal. 477) cited by plaintiff, is well in point. There a woman was left a legacy of $10,000. Due to the handwriting of the testator, the $10,000 was mistaken for $2,000 and she was informed by the executors that her legacy was in the latter amount. In the decree of distribution she was distributed $2,000. After she discovered the mistake, in a suit against the residuary legatees, to whom the residue of the estate had been distributed, for the payment to her of the $8,000, the court, after stating, "Executors occupy trust relations towards the legatees, and are bound to the utmost good faith in their transactions with the beneficiary" (p. 489), held that she was prevented by these false representations from appearing in the estate, and that such representations constituted extrinsic fraud.

*Westphal* v. *Westphal, supra* (20 Cal.2d 393), approves the principle of the Bacon case that fraud is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court, such as where he has been prevented from fully participating in the court proceeding. It then points out that there was no showing that the plaintiffs there had not received all notices of the probate proceedings, and "that plaintiffs were in any way prevented from appearing in the proceedings and calling the attention of the court to their interest in the estate" (P. 398.) Therein lies the difference from our case. Here, even though the cross-complainants probably received the usual probate notices, they had a right to rely upon the representations of their uncle, trustee and executor of their other uncle's estate, that their interests were

being taken care of by him. Likewise, the case of *Ringwalt* v. *Bank of America etc. Assn.,* 3 Cal.2d 680 [45 P.2d 967], is easily distinguishable from the case at bar. There the plaintiffs who were minors were attempting to attack a decree of distribution in an estate. It was conceded that the minors had received statutory notices of all proceedings. After disposing adversely of the contention that the decrees of distribution were not conclusive as against minors, the court then examined the complaint to see if facts were alleged constituting extrinsic fraud, and held that there was no allegation of anything done by the executor to prevent or hinder the minors and their mother from appearing in the estate. The court expressly endorsed the test of extrinsic fraud in the quotation from *United States* v. *Throckmorton,* which appears in the above excerpt from *Bacon* v. *Bacon, supra. Carr* v. *Bank of America etc. Assn.,* 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282], is somewhat analogous to the Ringwalt case, holding that a decree settling the final account in an estate is binding upon minors and that no extrinsic fraud was alleged or proved. Quoting (p. 374) from *Caldwell* v. *Taylor,* 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194], the court held, in effect, that extrinsic fraud is not the fraud upon which the original decree was based but a fraud which prevented the one defrauded from setting up his claim in the original proceeding. In both of these cases the court stated that there was a duty upon the mother of the minors, as their natural guardian, to see that their rights were protected, and that nothing was shown which excused her from not doing so. But in our case she was "lulled into security" by the promises and representations of one in whom she had the right to place faith, and who himself was in a fiduciary relationship toward her children.

Plaintiff contends that the issue of plaintiff's claim to the properties now claimed to belong to the Stuart estate and any fraud in connection with the deed from Stuart by which plaintiff claimed to have acquired the properties was litigated at the hearing of the final account and petition for distribution. This is true, but it was litigated in the absence of the cross-complainants, due to their being prevented from presenting their side of the question because they relied upon plaintiff's representations. As said in *Bacon* v. *Bacon, supra,* page 491: "The gravamen of the rule thus expressed lies in the fact that 'the unsuccessful party has been prevented from exhibiting fully his case,' and, consequently, that there has been 'no adversary trial or decision of the issue,' no 'real

contest at the trial,' or, as stated in *Pico* v. *Cohn,* [91 Cal. 135 (25 P. 970, 27 P. 537, 25 Am.St.Rep. 159)], no 'fair submission of the controversy.' Where the unsuccessful party has been thus hindered he is not to be refused relief on the ground that the fact on which his defense or claim in the original action depended, and by which he expects to bring about a different result in the new suit for equitable relief, was technically in issue in the original action or proceeding, or was necessarily decided by the court in that action and concluded by the original judgment beyond reach on collateral inquiry. It is because such judgment does conclude all parties so long as it stands unrevoked and unaffected by any direct attack, not only as to the facts actually in issue, but also as to all facts not in issue, but which might constitute a possible defense, and because it is therefore injurious, that there is ground for the interposition of equity to give this form of relief. To deny relief where the fact is technically in issue, though, by reason of the mistake or fraud, not controverted or contested at the trial or hearing, would be to destroy the equitable remedy in a large class of cases in which it has been hitherto administered.''

It would be unconscionable because of insufficiency in pleading which can be cured by amendment, to deny an opportunity to be heard in court to minors who, relying, as they had a right to do, on the representations of their uncle, trustee, and executor of an estate in which they were the sole legatees, were thereby kept out of court while that uncle convinced the court, in their absence, that the property claimed by the decedent in his will and by the minors, belonged to him and not to the estate of which he was the executor. Such a situation required a fair and full disclosure to the minors of the uncle's adverse claims and a fair and full opportunity to them to be represented in court and to contest the uncle's claims. According to the allegations of the cross-complaint, they were prevented from so doing because of the representations to them and their mother on which they relied. If that is not extrinsic fraud there can be no such thing as extrinsic fraud unless a person were kept away from court by physical violence.

■ While the first cause of action might be vulnerable to special demurrer, it is sufficient as against general demurrer, for it does, although rather weakly, set up extrinsic fraud in that it alleges that plaintiff concealed the true facts from the cross-complainants, namely, the fact that although plaintiff bore a confidential relationship to cross-complainants, he

did not disclose that he was claiming interests adverse to them. The very confidential relationship and failure to disclose his adverse interests would justify the minors in not appearing in the proceeding. For general demurrer purposes this fact appears sufficiently by inference from the allegations of the cause of action. Perhaps under special demurrer it should be more definitely alleged.

The second cause of action definitely sets up that the cross-complainants were lulled into a sense of security by plaintiff's alleged representations, and for that reason did not appear in the proceedings. Under special demurrer these allegations probably should be amplified.

The third cause of action alleges that the cross-complainants and their mother did not appear in the estate proceeding because of plaintiff's representation that he would hold all property received from the estate in trust for them. This cause of action is evidently framed upon the holding in *Apablasa* v. *de Sepulveda,* 91 Cal.App. 232 [267 P. 105].

The fourth cause of action sets up an alleged trust for cross-complainants in plaintiff. The fifth and sixth causes of action set up claims of ownership in cross-complainants in the real property and business and allege that plaintiff has no right therein. Just why it is claimed they do not state a cause of action does not appear. The fourth and fifth causes of action are apparently based on the holding in *Calkins* v. *Calkins,* 63 Cal.App. 292 [218 P. 611], and the sixth on the holding in *Maguire* v. *Cunningham,* 64 Cal.App. 536 [222 P. 838].

As said in *Hancock Oil Co.* v. *Hopkins,* 24 Cal.2d 497, at page 510 [150 P.2d 463]: "The complaint therefore states a cause of action against a general demurrer and denial of leave to amend was an abuse of discretion even if the special demurrer was well taken. However, upon a reconsideration of the special demurrer the court may require the clarification of any uncertainties in the statement of the essential elements of the right to interplead. (*Washer* v. *Bank of America,* 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338].)" (See also *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358].)

In view of our holding that the court erred in sustaining the demurrer without leave to amend and in striking out the cross-complaint, the judgment procured without the defendants being given an opportunity to attack the validity of plaintiff's title and to prove their own, will have to be reversed. Therefore, it becomes unnecessary to consider cross-complain-

ants' specifications of error at the trial and the questions raised on the motion for new trial.

We have not discussed the evidence in the case, as primarily the question involved here is one of pleading. The record shows not only was the demurrer to the cross-complant sustained without leave to amend, but at the trial cross-complainants were precluded from proving the facts therein alleged. As pointed out, cross-complainants alleged facts constituting extrinsic fraud under which the court should have permitted them to make their showing of those facts, and of the facts of the fraud which they claimed was committed on the court in the estate proceeding. In any event, the court should not have denied the cross-complainants the right to amend their cross-complaint. We are not deciding, however, that the cross-complaint was not subject to special demurrer, and the trial court may, in its discretion, require the clarification of uncertainties or ambiguities in the cross-complaint.

The judgment is reversed, the order sustaining the demurrer to the second amended cross-complaint (erroneously designated the third amended cross-complaint) without leave to amend, and the order striking said amended cross-complaint from the files, are also reversed.

Peters, P. J., and Finley, J. pro tem., concurred.